UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LATAVIOUS BEAL,

        Plaintiff,

v.

THOMAS PERTTU,

        Defendant.
_____/

Case No. 2:23-cv-251

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims, Fourteenth Amendment due process claims, and state law claims for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim premised on Plaintiff's transfer to a different segregation housing unit. Plaintiff's First Amendment retaliation claim against Defendant Perttu premised on the

issuance of a class II misconduct charge and the related imposition of restrictions will remain in the case.

## Discussion

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues AMF Resident Unit Manager Thomas Perttu in his individual and official capacity. (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that on June 29, 2023, Defendant Perttu conducted rounds in segregation housing unit 2, where Plaintiff was housed. (*Id.*, PageID.4.) At Plaintiff's cell, Defendant Perttu stated, "[Plaintiff] pull your cock out so I can see it or after Thanksgiving I'm moving you back to unit three where I work overtime third shift."[1] (*Id.*) In response, Plaintiff told Defendant Perttu that he "sound[ed] stupid" and that Plaintiff "only like[s] girls." (*Id.*) Thereafter, Plaintiff wrote a Prison Rape Elimination Act (PREA) grievance on Defendant Perttu "for sexual harassment." (*Id.*)

Subsequently, on November 27, 2023, Defendant Perttu "g[ot] [Plaintiff] moved to segregation housing unit three, as promise[d] on 6-29-23." (*Id.*) On December 2, 2023, Defendant Perttu conducted rounds during third shift in the segregation unit where Plaintiff was housed. (*Id.*) Upon arrival at Plaintiff's cell, Defendant Perttu "beep[ed] the door with force, waking [Plaintiff] up." (*Id.*) Plaintiff went to the door and asked, "what's the issue?" (*Id.*) Defendant Perttu then walked away. (*Id.*, PageID.5.) Plaintiff claims that at some unspecified time, Defendant Perttu

---

[1] In this opinion, the Court corrects the punctuation, capitalization, and spelling in quotations from Plaintiff's complaint.

2

returned to Plaintiff's cell and stated: "[Plaintiff] you back over here on third shift where I work a lot of overtime; I will do you just like room 124 in request—take all your shits paperwork or quartermaster state issue[d] if you keep telling me 'no' every time asked to see your Black dick." (*Id.* (grammar in original retained).) Thereafter, on December 4, 2023, Plaintiff wrote another PREA grievance on Defendant Perttu "for sexual harassment." (*Id.*)

On December 7, 2023, Defendant Perttu "fabricated a class two [misconduct charge against Plaintiff] and a restriction of segregation property and privilege, as promise[d]." (*Id.*) The assistant deputy warden, a non-party, approved the 30-day restriction. (*Id.*)

On December 9, 2023, Defendant Perttu again worked in Plaintiff's segregation unit during third shift and "beep[ed] . . . [Plaintiff's] door with force[]," stating "all you had to do was show me your Black dick and I wouldn't never [have] lied on you and you would still have your state issue[d] clothing." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Perttu violated his First Amendment right to be free from retaliation and his Eighth Amendment right to be free from cruel and unusual punishment.[2] (*Id.*, PageID.1, 4.) Additionally, the Court construes Plaintiff's complaint to raise due process claims under the Fourteenth Amendment. Plaintiff seeks monetary damages, as well as unspecified injunctive and declaratory relief. (*Id.*, PageID.6.)

---

[2] In Plaintiff's complaint, when setting forth the Court's jurisdiction in the case, Plaintiff states that "the Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. [§] 1367." (Compl., ECF No. 1, PageID.2.) However, Plaintiff does not identify any specific tort claims that he intends to bring against Defendant Perttu, and Plaintiff's complaint contains no further reference to any state law claims. Under these circumstances, Plaintiff fails to state any state law claims because he fails to actually identify any state law claims that he brings in his suit. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–61 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Therefore, the Court will dismiss Plaintiff's state law claims without prejudice for failure to state a claim.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Retaliation Claims

Plaintiff contends that Defendant Perttu retaliated against him in violation of his First Amendment rights. (Compl., ECF No. 1, PageID.1, 4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.     Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing PREA grievances regarding Defendant Perttu's behavior. (Compl., ECF No. 1, PageID.4–5.) Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

#### a. Transfer to Different Housing Unit

Plaintiff alleges that following his first PREA grievance against Defendant Perttu, Plaintiff was transferred from segregation housing unit 2 to segregation housing unit 3. (*See* Compl., ECF No. 1, PageID.4.)

Typically, transfers to the general population of another prison are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, the Sixth Circuit held that transfer from general population to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75.

In this action, Plaintiff alleges that he was transferred from one segregation housing unit (unit 2) to another segregation housing unit (unit 3). (*See* Compl., ECF No. 1, PageID.4.) Plaintiff alleges no facts to suggest that segregation housing unit 3 was any different from segregation housing unit 2, except that Defendant Perttu apparently worked overtime during third shift in unit 3. (*See id.*) Under the circumstances alleged by Plaintiff, the Court concludes that Plaintiff's transfer from one segregation housing unit to another segregation housing unit did not constitute adverse action. Therefore, any First Amendment retaliation claim premised on Plaintiff's transfer to segregation housing unit 3 will be dismissed.

### b. Issuance of Misconduct Charge and Related Property Restriction

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Here, Plaintiff states that Defendant Perttu "fabricated a class two [misconduct charge] and a restriction of segregation property and privilege." (Compl., ECF No. 1, PageID.5.) At this stage of the proceedings, Plaintiff's allegations regarding the issuance of a misconduct charge and the imposition of additional restrictions are sufficient to show adverse action.

### 3. Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

As to Plaintiff's First Amendment retaliation claim premised on Defendant Perttu's issuance of the class II misconduct charge and the related imposition of restrictions, although Plaintiff has by no means proven a retaliation claim, at this stage of the proceedings, the Court will not dismiss this retaliation claim.

### B. Eighth Amendment Claims

Plaintiff next alleges that Defendant Perttu violated his rights under the Eighth Amendment. (Compl., ECF No. 1, PageID.1, 4.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to

guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the United States Court of Appeals for the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth

Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, Defendant Perttu asked Plaintiff to show Plaintiff's private parts to Perttu while Perttu was conducting rounds in Plaintiff's housing unit, and on two occasions, Perttu referenced his past statements regarding Plaintiff showing his private parts to Perttu. (*See* Compl., ECF No. 1, PageID.4–5.) Under the circumstances alleged by Plaintiff, Defendant Perttu's verbal remarks, while offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Perttu will be dismissed.

  **C.**   **Fourteenth Amendment Due Process Clause Claims**

The Court construes Plaintiff's complaint to raise procedural and substantive due process claims under the Fourteenth Amendment. (*See* Compl., ECF No. 1, PageID.4–5.)

1. **Procedural Due Process Claims**

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105 ¶ C, a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022). The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Here, Plaintiff states that Defendant Perttu "fabricated a class two [misconduct charge against Plaintiff] and a restriction of segregation property and privilege." (Compl., ECF No. 1, PageID.5.) Plaintiff further states that the assistant deputy warden, a non-party, approved the 30-day restriction. (*Id.*) Plaintiff does not specifically allege that he was found guilty of the class II misconduct charge in question. (*See id.*, PageID.4–5.) Instead, Plaintiff only states that he received "a restriction of segregation property and privilege" for thirty days. (*Id.*, PageID.5.)

If Plaintiff was found guilty of the class II misconduct charge, he could not have been denied good time or disciplinary credits as a result of his class II and III misconduct convictions. *See* MDOC Policy Directive 03.03.105 ¶ DDDD (eff. Apr. 18, 2022). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben*, 887 F.3d 252; *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Furthermore, as to the "restriction of segregation property" that Plaintiff states he received, later allegations in the complaint, as well as the attachments to the complaint, suggest that this involved a restriction on the amount of "state issue[d] clothing" that Plaintiff could possess because the misconduct in question was issued for Plaintiff allegedly covering his cell windows with his clothing. (*See* Compl., ECF No. 1, PageID.5; ECF No. 1-1, PageID.10–11.) Plaintiff does not allege that he did not have any clothing during the 30-day restriction period; instead, it appears that the number of extra clothing items that Plaintiff could possess during this 30-day period was restricted. (*See* Compl., ECF No. 1, PageID.5.) Under these circumstances, Plaintiff alleges no facts to indicate that any sanctions he received constituted an "atypical and significant" deprivation under *Sandin*, 515 U.S. at 484.[3] *See, e.g.*, *Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221,

---

[3] Furthermore, to the extent that Plaintiff intended to allege that Defendant Perttu deprived him of property (i.e., his clothing) without due process of law, this claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*."); *Hinds v. Lewis*, No. 1:19-cv-279, 2019 WL 2223253, at *5 (W.D. Mich. May 23, 2019) (recognizing that a prisoner has no right to possess unlimited property in his cell); *Blanton v. Caruso*, No. 1:10-cv-1187, 2011 WL 202094, at *3 (W.D. Mich. Jan. 19, 2011) (holding that a limitation on in-cell property is not atypical and significant).

Accordingly, for these reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding his class II misconduct charge and the related imposition of restrictions.

### 2. Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, it is clear that Plaintiff believes that Defendant Perttu retaliated against Plaintiff by transferring Plaintiff to a different

12

housing unit and by "fabricat[ing]" a class II misconduct charge against Plaintiff. (Compl., ECF No. 1, PageID.5. Additionally, Plaintiff alleges that Defendant Perttu verbally harassed Plaintiff. (*See id.*, PageID.4–5.) While the Court does not condone Defendant's actions, under the circumstances alleged by Plaintiff, his allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to be free from verbal harassment and the First Amendment applies to protect Plaintiff's right to be free from retaliation.

Accordingly, for these reasons, any intended substantive due process claims will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's Eighth Amendment claims and Fourteenth Amendment due process claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court

will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim premised on Plaintiff's transfer to a different segregation housing unit. Additionally, the Court will dismiss Plaintiff's state law claims without prejudice for failure to state a claim. Plaintiff's First Amendment retaliation claim against Defendant Perttu premised on the issuance of a class II misconduct charge and the related imposition of restrictions remains in the case.

An order consistent with this opinion will be entered.

Dated:  April 1, 2024                                           /s/ Jane M. Beckering
                                                                                                 Jane M. Beckering
                                                                                                 United States District Judge